# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JAMES CURTIS,**

                **Plaintiff,**

    v.                                          Case No. 18-CV-1822

**LISA SCHWARTZ,** *et al.***,**

                **Defendants.**

## DECISION AND ORDER GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff James Curtis, who is representing himself, initiated a lawsuit under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights while he was on probation. The court screened the second amended complaint and allowed Curtis to proceed against defendants Lisa Schwartz (Senior Probation and Parole Agent) and Debbie Adams (Community Corrections Agent) on a retaliation claim and against Jennifer Arndt (Corrections Field Supervisor), Lisa Yeates (Department of Corrections Regional Chief), Lance Wiersma (Administrator with the Division of Community Corrections), and Cathy Jess (Secretary of the Department of Corrections from June 11, 2018 to January 7, 2019) for failing to intervene to stop the retaliatory behavior. The defendants moved for summary judgment, and that motion is ready for the court's decision.

1. Relevant Facts

During the period that is relevant to this lawsuit Curits was on probation and subject to the supervision of the Wisconsin Department of Corrections, Division of Community Corrections (DCC). He had been convicted of bail jumping in Kenosha County Circuit Court in 2017 (ECF No. 38, ¶ 8) and a third offense of driving under the influence in Illinois (ECF No. 38, ¶ 29). Wisconsin DCC agreed to supervise Curtis while he was on probation for his Illinois conviction, in conjunction with his supervision for the Kenosha bail jumping conviction. (ECF No. 38, ¶¶ 29-31.) Because Curtis was on probation for a third drunk driving offense, DCC policies (commonly referred to as ACT 100 in reference to 2009 Wis. Act 100, an act that amended Wisconsin's drunk driving laws), Curtis was prohibited from consuming alcohol and required to submit to alcohol monitoring. (ECF No. 38, ¶¶ 31, 36.)

SoberLink is one of the tools the DCC uses to supervise offenders to determine if an offender has consumed alcohol. (ECF No. 38, ¶ 14.) It is a device that indicates the amount of alcohol in an individual's system. (ECF No. 38, ¶ 11.) It is a remote breathalyzer and alcohol monitoring system that uses facial recognition and GPS technology. (ECF No. 38, ¶ 11.) It transmits blood alcohol concentration (BAC) results wirelessly to a monitoring center. (ECF No. 38, ¶ 11) SoberLink will also indicate if a required test is missed. (ECF No. 38, ¶ 12.) If SoberLink indicates a positive result for alcohol, the offender must complete follow up tests to prove sobriety. (ECF No. 38, ¶ 13.)

Because Curtis was subject to alcohol monitoring, he was transferred from Agent Poulson to Agent Schwartz, who had been specially trained to supervise such offenders. (ECF No. 38, ¶ 32.) Transferring to a new agent also meant that Curtis was transferred to a new office. (ECF No. 38, ¶ 39.) Although he lived only a few blocks from the new office, Curtis was unhappy with the transfer. (ECF No. 38, ¶¶ 39-40.) When he first met with Schwartz, Curtis complained about the transfer and the requirement that he comply with SoberLink. He told her that he would be filing a grievance about the changes. (ECF Nos. 38, ¶ 40; 40-3 at 15.) Curtis filed such a grievance on September 19, 2018. (ECF No. 38, ¶ 116.)

On September 3, 2018, Curtis failed the SoberLink test that he took at 4:04 p.m. with a BAC of .039. (ECF No. 38, ¶ 41.) Having failed the test, Curtis was required to retake the test every 15 minutes for an hour. (ECF No. 38, ¶ 42.) He did not. (ECF No. 38, ¶ 42.) When he finally took another test shortly before 7:00 p.m., his BAC was .009. (ECF No. 38, ¶ 49.) By the next test at 9:00 p.m., SoberLink did not detect any alcohol. (ECF No. 38, ¶ 44.)

When Schwartz discussed the tests with Curtis, he denied consuming alcohol and said he uses ethanol at work and had cleaned his face with alcohol wipes. (ECF No. 38, ¶ 47.) Schwartz gave him a verbal warning for the violation and reminded him not to use any product that contains alcohol, including alcohol wipes. (ECF No. 38, ¶¶ 36, 49.)

3

On September 8, 2018, Curtis missed a required 4:00 p.m. SoberLink test. (ECF No. 38, ¶ 50.) When he took the test about 40 minutes late, his BAC was .028. (ECF No. 38, ¶ 50.) Sixteen minutes later his BAC was .027. (ECF No. 38, ¶ 51.) Curtis failed to take the next four required tests. (ECF No. 38, ¶ 52.) He again denied drinking and asserted that the positive test was because he spilled paint thinner on himself and a barber sprayed something on him when he had his hair cut. (ECF No. 38, ¶¶ 53-54.) A warrant was issued for his arrest the same day. (ECF No. 38, ¶ 57.)

Schwartz did not learn of Curtis's failed tests until September 10, 2018. (ECF No. 38, ¶ 58.) She did not find his explanation credible (ECF No. 38, ¶ 55), and Curtis was detained for three days for violating his probation (ECF No. 38, ¶ 60). When he was released from jail, Curtis was transferred to Adams for supervision. (ECF No. 38, ¶ 64.) But after their first meeting, at which Adams reminded Curtis of the requirements of SoberLink testing and the prohibition on using any products that contain alcohol, Curtis was transferred back to Schwartz. (ECF No. 38, ¶ 70.)

Curtis was late taking a SoberLink test on September 23, 2018 (ECF No. 38, ¶ 71), and on September 25 he submitted a test that was positive, with a BAC of .032. (ECF No. 38, ¶ 72.) Schwartz called Curtis and reminded him to re-test four times, every fifteen minutes. (ECF No. 38, ¶ 73.) His next four tests were all positive, with the BAC decreasing slightly over time. (ECF No. 38, ¶¶ 74-76.)

4

Curtis denied drinking on September 25 and said that he had used hand sanitizer. (ECF No. 38, ¶ 79.) Schwartz concluded that Curtis's test results were not consistent with having used hand sanitizer, and Curtis was ordered to serve a 41-day sanction at the Kenosha County Jail. (ECF No. 38, ¶ 83.) Curtis filed a grievance about this on September 27. (ECF No. 38, ¶ 118.) He filed another grievance on October 4 in which he complained about SoberLink and being placed in custody. (ECF No. 38, ¶ 119.) Four days later, on October 8, 2018, Curtis wrote a letter directed to the Corrections Secretary and DCC Administrator in which he alleged that Schwartz was retaliating against him. (ECF No. 38, ¶¶ 120-21.)

When Curtis was eventually released from jail on November 13, 2018, following the probation sanction and an unrelated matter in Racine County, he was instructed to report to the probation office that morning. (ECF No. 38, ¶ 90.) He did not report until 5:00 p.m., and when he did his BAC was 0.15. (ECF No. 38, ¶ 91.)

Curtis's complaints were rejected in a letter dated November 13. (ECF No. 38, ¶ 124.) On November 16 and 23, Curtis was late or failed to take SoberLink tests. (ECF No. 38, ¶¶ 95-97.) On November 26, he tested positive for alcohol and failed to retest every fifteen minutes thereafter. (ECF No. 38, ¶ ¶ 99, 103.) Curtis blamed the positive test on having used mouthwash. (ECF No. 38, ¶ 101.) Schwartz did not find his explanation

5

credible. (ECF No. 38, ¶ 102.) A warrant was issued, and Curtis was arrested. (ECF No. 38, ¶ 105.) He admitted to certain violations. (ECF No. 38, ¶ 109.)

While Curtis was in jail Schwartz presented him with an Alternative to Revocation (ATR), which she explained was the only way he could get out of jail. (ECF No. 38, ¶ 113.) Curtis signed the ATR agreement but soon tried to withdraw his agreement, claiming he signed under duress. (ECF No. 38, ¶¶ 108, 133.) On December 1, Curtis appealed the rejection of his complaints. (ECF No. 38, ¶ 128.) On December 20, Curtis wrote to Secretary Jess regarding his complaints with Schwartz and SoberLink. (ECF No. 38, ¶ 135.) Curtis also wrote to Wiersma on December 22 to complain about SoberLink and to claim that Schwartz was retaliating against him for his complaints. (ECF No. 38, ¶ 138.) Wiersma responded to Curtis's appeal and letters on January 4, 9, and 18, 2019, concluding that his case had been handled appropriately. (ECF No. 38, ¶¶ 141-44.)

Curtis was subsequently released from jail and placed in an inpatient treatment program. (ECF No. 38, ¶ 113.) He completed the program but failed to comply with aftercare, in violation of the ATR. (ECF No. 38, ¶ 114.)

**2. Summary Judgment Standard**

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629

F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, the court takes evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

3. **Analysis**

The court allowed Curtis to proceed on two related claims. First, on a retaliation claim against defendants Schwartz and Adams based on his allegations that they sanctioned him for filing grievances. Second, against defendants Arndt,

7

Yeates, Wiersma, and Jess on a claim they failed to intervene and stop the retaliation he was experiencing.

### 3.1. Retaliation Claim Against Schwartz and Adams

"To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). If the plaintiff meets these three elements the defendants may avoid liability if they can "show that they would have taken the action despite the bad motive." *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). However, "because of both the near inevitability of decisions and actions by [probation] officials to which [probationers] will take exception and the ease with which claims of retaliation may be fabricated, courts should examine prisoners' claims of retaliation with skepticism and particular care." *Morris v. Nelson*, No. 17-cv-05940, 2020 U.S. Dist. LEXIS 51306, at *17 (N.D. Ill. Mar. 23, 2020) (quoting *Verser v. Smith*, No. 14 C 1187, 2017 WL 528381, at *8 (N.D. Ill. Feb. 9, 2017)); *see also Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Schwartz sanctioned Curtis on three occasions: by taking him into custody on September 10, 2018; by placing him in jail on September 26, 2018; and by placing him in custody (and subsequently in a residential treatment program) on November 27, 2018. Each time, there were documented rule violations preceding the sanctions.

8

Before Schwartz sanctioned Curtis on September 10, 2018, by having him taken into custody, the following had occurred:

- Curtis missed his 4:00 p.m. SoberLink test on September 8, 2018.

- When he tested at 4:39 p.m. on September 8, 2018, it was positive for alcohol with a BAC of .028.

- Curtis tested again at 4:55 p.m., and his BAC was .027.

- Curtis then failed to take the next four tests on September 8, 2018.

When Schwartz decided to sanction Curtis on September 26, 2018, by placing him jail, the following had previously occurred:

- Curtis was approximately 90 minutes late taking his SoberLink test on September 23, 2018.

- When Curtis took his SoberLink test on September 25, 2018 at 3:58 p.m., he had a positive result with a BAC of .032.

- The SoberLink tests he took over the next hour on September 25, 2018 were all positive.

Finally, prior to Schwartz's decision to sanction Curtis with jail on November 27, 2018 (and subsequently place him in a treatment center), the following had occurred:

- On November 13, 2018, Curtis tested positive on the SoberLink device.

- Curtis failed to take his required test at 9:00 p.m. on November 16, 2018.

- Curtis was 48 minutes late taking his SoberLink test on November 23, 2018.

- On November 26, 2018, Curtis tested positive at 5:19 p.m. with a BAC of .027.

- Curtis failed to retest at fifteen-minute intervals on November 26, 2018. The next test he took was at 7:09 p.m., and he had a positive result of .009.

Curtis's Rules of Supervision prohibited him from consuming or possessing any alcohol. (ECF No. 40-9 at 5.) Beginning on September 17, 2018, he was also required to comply with electronic monitoring (i.e., the SoberLink device). (*Id.* at 7.) Before each sanction, Curtis violated his Rules of Supervision. These were objective, nonretaliatory reasons for Schwartz to sanction him.

In response to the defendants' summary judgment motion Curtis offers broad complaints about his supervision. He argues that he was not subject to ACT 100 because only Wisconsin convictions should be considered and one of his OWI convictions was in Illinois. (ECF Nos. 50 at 2.; 52 at 4) Because he was not subject to supervision under ACT 100, he argues that he should not have been transferred to a new agent and should not have been ordered to comply with the SoberLink device. He disputes the positive test results from the SoberLink device, asserts that he was not reminded to test again after positive tests (ECF No. 50 at 4), and argues that the DCC failed to comply with Wis. Admin. Code § DOC 331.03(1) and investigate those positive tests. (ECF No. 50 at 2.)

Even if Curtis could prove all of these assertions, it would not lead a reasonable jury to conclude that the defendants retaliated against him. Actions are not retaliatory merely because they were mistaken. To prevail on a retaliation claim a plaintiff must offer more than speculation or a hunch that his protected activity influenced the sanctions. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008);

10

*see also Wilson v. Rundle*, 774 F. App'x 989, 991 (7th Cir. 2019). It is not enough even if, in the plaintiff's view, there could be no explanation for the punitive actions other than retaliation. *Wilson*, 774 F. App'x at 991.

Curtis lacks any personal knowledge of the defendants' motives, and he has not pointed to any document, statement, or other proof evidencing a retaliatory motive. *See Springer*, 518 F.3d at 484. Undermining Curtis's speculation of retaliation is the fact that his violations were based on objective evidence—positive test results and failures to take tests as required. While Curtis disputes whether the positive test results meant that he had consumed alcohol and whether he was reminded to re-test, it is undisputed that Curtis tested positive for alcohol, tested late, and failed to re-test as required. The fact that the defendants had objective reasons to conclude that Curtis violated the conditions of his probation, some of which Curtis admitted (*see, e.g.*, ECF Nos. 48-1 at 87; 51-1 at 75), is inconsistent with his claim of retaliation. *See Morris*, 2020 U.S. Dist. LEXIS 51306, at *19-20 (citing *Williams v. Snyder*, 367 F. App'x 679, 682 (7th Cir. 2010); *Antoine v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012); *Whitfield v. Snyder*, 263 F. App'x 518, 522 (7th Cir. 2008); *LaBoy v. Clements*, No. 15 CV 10771, 2017 U.S. Dist. LEXIS 106248, 2017 WL 2936705, at *8 (N.D. Ill. July 10, 2017); *Harris v. Hodge*, No. 3:11-CV-0097, 2016 U.S. Dist. LEXIS 153459 2016 WL 6581294, at *4 (S.D. Ill. Nov. 4, 2016)). This was not a situation where ambiguous conduct led to questionable exercises of official discretion. Rather, it is entirely expected that Curtis's violations would result in sanctions and

11

those sanctions would become progressively more severe. *See Springer*, 518 F.3d at 485 (noting how the alleged retaliatory conduct was entirely normal).

Curtis's objective violations resulted in automatic sanctions. In fact, warrants for SoberLink violations were issued by a central monitoring center rather than by the supervising agent. (ECF No. 48-1, ¶ 8; 52-1, ¶ 8.) Thus, in at least one instance, Schwartz did not even know that a warrant had been issued for Curtis's arrest until days later. (ECF No. 38, ¶¶ 57-58.)

Perhaps Curtis could argue that evidence of retaliation could be found in allegedly suspicious timing or temporal proximity between his protected conduct and the alleged retaliatory conduct. But such temporal proximity is insufficient to survive a motion for summary judgment, *Springer*, 518 F.3d at 485; *see also Wilson*, 774 F. App'x at 992 (citing *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012)); *Soto v. Bertrand*, 328 F. App'x 331, 333 (7th Cir. 2009). Any relevance of temporality is especially diminished here because Curtis was a near constant complainer about one thing or another. (*See, e.g.*, ECF Nos. 48-1 at 27-40, 51, 53, 55-58, 63-73, 111; 49 at 15-16.) When a plaintiff has a long pattern of filing complaints, it is no surprise that a sanction will be imposed in proximity to a complaint.

Finally, plaintiffs often attempt to prove retaliation by presenting evidence of disparate treatment—evidence that he was treated differently from another offender who had the same pattern of violations but who did not engage in protected activity. While this evidence, on its own, is usually insufficient to defeat summary judgment,

12

Case 2:18-cv-01822-WED   Filed 08/19/20   Page 12 of 15   Document 64

*Williams*, 367 F. App'x at 682, Curtis does not offer even this superficial evidence to support his claim.

In sum, Curtis has failed to adduce evidence that could lead a reasonable finder of fact to conclude that his repeated non-compliance with the conditions of his probation was a pretext for Schwartz and Adams to retaliate against him.

### 3.2. Failure to Intervene Claim Against Arndt, Yeates, Wiersma, and Jess

An official may be liable under § 1983 for failing to intervene and prevent another official's unconstitutional conduct if an official (1) has reason to know that a fellow official was committing a constitutional violation; and the official "had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation …." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005).

Because Schwartz and Adams did not unconstitutionally retaliate against Curtis, it necessarily follows that Arndt, Yeates, Wiersma, and Jess cannot be liable for having not intervened. Therefore, the defendants are entitled to summary judgment on Curtis's failure to intervene claim.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (ECF No. 36) is **granted**. Curtis's second amended complaint and this action are dismissed. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that Curtis's "Motion for Order of Law Library Services" (ECF No. 31) is **moot and dismissed as such**.

13

**IT IS FURTHER ORDERED** that Curtis's "Motion to Set for Trial" (ECF No. 32) is **moot and dismissed as such**.

**IT IS FURTHER ORDERED** that the defendants' motion for an extension of time in which to file a reply (ECF No. 53) is **moot and dismissed as such**.

**IT IS FURTHER ORDERED** that Curtis' "Motion to Screen Complaint" (ECF No. 56) is terminated for administrative purposes. The document is captioned with case number 19-CV-417, another lawsuit Curtis has pending in this district. The Clerk's Office incorrectly filed it in this matter. The Clerk's Office shall refile it in case number 19-CV-417.

**IT IS FURTHER ORDERED** that Curtis's "Motion for Request to Commence Criminal Proceedings" (ECF No. 61) is **denied**. The court has no authority to grant the plaintiff the relief he seeks.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment (60 days if one of the parties is, for example, the United States, a United States agency, or a United States officer or employee sued in an official capacity). *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment

14

under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 19th day of August, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge